NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CUTSFORTH, INC.,**
*Appellant*

**v.**

**MOTIVEPOWER, INC.,**
*Appellee*

_____

2015-1314

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. IPR2013-00268.

_____

Decided: April 6, 2016

_____

ROBERT P. COURTNEY, Fish & Richardson P.C., Minneapolis, MN, argued for appellant. Also represented by MATHIAS WETZSTEIN SAMUEL, CONRAD GOSEN.

JASON ALEXANDER ENGEL, K&L Gates LLP, Chicago, IL, argued for appellee. Also represented by ALAN L. BARRY, ROBERT J. BARZ, BENJAMIN EDWARD WEED.

_____

Before PROST, *Chief Judge,* CLEVENGER, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

Cutsforth, Inc. appeals from the final written decision of the Patent Trial and Appeal Board ("Board") in an inter partes review ("IPR") concluding that claims 14, 16–19, and 21–22 of U.S. Patent No. 7,141,906 are anticipated. Because the Board erred in construing the claim terms "projection extending from" and "brush catch coupled to the beam," we *reverse*.

BACKGROUND

The '906 patent is directed to a removable brush holder assembly used in electrical devices or slip ring assemblies, such as electric generators and motors. '906 patent col. 1 ll. 14–16. A "brush" is a component in an electrical device that passes electrical current from a rotating conductive surface to other structures, or vice versa. *Id.* col. 1 ll. 20–26. A brush holder assembly holds a brush in contact with a moving conductive contact surface so that electrical current can pass into or out of the moving conductive contact surface. *Id.* col. 1 ll. 33–35. The invention makes it easier to remove and replace brushes during operation as the brushes wear down, which allows for safer and more cost effective maintenance. *Id.* col. 1 ll. 35–40, col. 2 ll. 14–16.

Claim 14, the only independent claim on appeal, recites (emphases added):

14. A brush holder assembly for holding a brush having a conductive element, the brush holder assembly comprising:

a mounting block including an engagement portion;

a beam having an engagement portion complementary with the mounting block

engagement portion, wherein the mounting block engagement portion is slidably engaged with the beam engagement portion, and wherein the beam is slidable relative to the mounting block between a first, disengaged position and a second, engaged position;

a *brush catch coupled to the beam* for selectively engaging the brush; and

a brush release extending from the mounting block and configured for sliding engagement with the brush catch said brush release is a *projection extending from* the mounting block.

MotivePower, Inc. petitioned for IPR of claims 1, 2, 4, 5, 10–14, 16–19, 21, and 22 of the '906 patent on nine grounds of unpatentability.[1] On November 1, 2013, the Board instituted IPR as to all asserted claims, but only on the following three grounds: (i) claims 1, 2, 4, 5, 10–14, 16–19, 21, and 22 as anticipated by U.S. Patent No. 3,864,803 ("Ohmstedt"), (ii) claims 1, 2, 4, 5, 10, 11, 14, 16–19, 21, and 22 as anticipated by U.S. Patent No. 3,387,155 ("Krulls"), and (iii) claims 12 and 13 as

---

[1] MotivePower petitioned for IPR of five related patents, including the '906 patent. The Board instituted all five IPRs and every challenged claim was either cancelled by Cutsforth or found to be unpatentable by the Board. Cutsforth appealed three of the five decisions, including this one and Appeal Nos. 2015-1315 and -1316, which were consolidated for oral argument before this Court. We have already resolved Appeal Nos. 2015-1315 and -1316. *Cutsforth, Inc. v. MotivePower, Inc.*, 626 F. App'x 1011 (Fed. Cir. 2015); *Cutsforth, Inc. v. MotivePower, Inc.*, No. 2015-1316, 2016 WL 279984 (Fed. Cir. Jan. 22, 2016).

obvious over Krulls and Ohmstedt. During the IPR proceeding, Cutsforth canceled claims 1, 2, 4, 5, and 10-13, rendering the third ground moot. The Board issued its final written decision on October 30, 2014. The Board construed the claim terms at issue, and based on those constructions, found that Ohmstedt and Krulls each anticipated independent claim 14 and its dependent claims 16–19, 21–22 of the '906 patent ("claims-at-issue"). Cutsforth timely appealed the Board's final written decision to this Court. We have jurisdiction under 28 U.S.C. § 1295(a)(4).

## DISCUSSION

In IPRs, the Board gives claims their broadest reasonable interpretation consistent with the specification. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279 (Fed. Cir. 2015), *cert. granted*, 84 U.S.L.W. 3218 (U.S. Jan. 15, 2016) (No. 15-446). We review claim construction de novo except for subsidiary fact findings based on extrinsic evidence, which we review for substantial evidence. *Id.* at 1280. Anticipation under 35 U.S.C. § 102 is a question of fact, and we review the Board's factual findings for substantial evidence. *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015).

### I.    The "Projection Extending From" Limitation

The claims-at-issue recite "a brush release extending from the mounting block and . . . said brush release is a *projection extending from the mounting block*." The Board construed the phrase "projection extending from the mounting block" to have its plain meaning without providing a specific construction. It rejected Cutsforth's proposed construction—"a structure that protrudes outwardly from the mounting block"—as not supported by the specification, and concluded that the phrase is not limited only to projections extending outwardly from the mounting block.

Cutsforth argues that the Board failed to explicitly address the parties' key dispute for this term: whether a projection must "jut out" from its surroundings. It argues that the *direction* of a projection—whether it projects outward or inward—is not the issue. It argues that the Board's interpretation cannot be reconciled with the plain English meaning of "projection," which requires a jutting out. It argues that no reasonable interpretation of a "projection extending from the mounting block" could cover the ramp 59 in Ohmstedt that the Board found disclosed this limitation, as that ramp 59 neither "extends" out above the surface of the brush box 13 nor "projects" from the brush box 13's face. We agree with Cutsforth that the Board's claim construction was erroneous.

While claims are given their broadest reasonable interpretation in IPR proceedings, claim interpretation still "must be *reasonable* in light of the claims and specification." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, --- F.3d ---, No. 2015-1364, 2016 WL 692369, at *5 (Fed. Cir. Feb. 22, 2016). The Board's interpretation of "a projection extending from the mounting block" far exceeds the scope of its plain meaning and is not justified by the specification. We hold that the Board's interpretation, which encompasses a structure that recedes into the mounting block rather than jutting out from it, is unreasonable.

Cutsforth presented evidence that the plain meaning of "projection" in the context of a mechanical device requires a protrusion that juts out from its surroundings. *See, e.g.*, J.A. 471 (Webster's 3rd New Int'l Dictionary 1813 (1993) (defining "projection" as "(1): a jutting out or causing to jut out (2): a part that projects or juts out: an extension beyond something else")). This plain meaning is consistent with the language of the claims. Claim 14 twice recites that the projection "*extend[s]* from the mounting block," consistent with the dictionary definition, "an extension beyond something else." The specification

uses the term "projection" consistent with its plain mean-
ing. The claimed "projection extending from the mounting
block" corresponds to the brush release 110 shown in
figure 12 of the '906 patent specification. While the brush
release 110 may not be jutting out from the beam 14 (i.e.,
the shaded element), it does jut out *from the lower mount-
ing block 16* as required by the claim.



FIGURE 12 ('906 PATENT)

MotivePower does not dispute that the plain meaning
of "projection" requires a jutting out from its surroundings.
Rather, it argues that the Board was free to reject
Cutsforth's dictionary definition and expert testimony.
We recognize that the Board has wide discretion in its
treatment of such extrinsic evidence. However, even
without the evidence put forth by Cutsforth, MotivePower
presented no evidence to justify the Board's interpretation.
Unless the patentee acted as his own lexicographer, no
reasonable interpretation of a "projection extending from
the mounting block" can encompass something that
protrudes into the mounting block. But "[t]o act as its
own lexicographer, a patentee must clearly set forth a
definition of the disputed claim term other than its plain
and ordinary meaning." *Thorner v. Sony Computer*

*Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citation and quotation marks omitted). There is no evidence that the inventors intended to give a special definition to the term "projection" that far exceeds the scope of its plain meaning. Thus, we conclude that a "projection extending from the mounting block" must jut out from the mounting block.

We next address the Board's finding that Ohmstedt discloses the "projection" limitation. MotivePower argues that if we adopt the construction advanced by Cutsforth, we should remand for the Board to determine whether Ohmstedt discloses the claimed "projection." We disagree. As an initial matter, MotivePower has preserved no argument that Ohmstedt discloses the "projection" limitation under Cutsforth's construction. *See* Petitioner's Reply to Patent Owner's Response at 12–13, *MotivePower, Inc. v. Cutsforth, Inc.*, No. IPR2013-00268, 2013 WL 8595963 (P.T.A.B. Nov. 1, 2013), Paper No. 21. Even if MotivePower had preserved this argument, under the construction we adopt today, no reasonable fact finder could conclude that Ohmstedt's ramps 59 are "projection[s] extending from" its brush box 13. We thus reverse the Board's finding that Ohmstedt anticipated the claims-at-issue.



**EXCERPT FROM FIGURE 1 (OHMSTEDT)**

## II.    The "Brush Catch Coupled to the Beam" Limitation

The claims-at-issue recite "a brush catch coupled to the beam." Cutsforth argued before the Board that this claim language prohibits the "brush catch" from being a sub-component of the "beam." The Board disagreed, and held that a "brush catch" may be a sub-component of the "beam" and still be considered to be "coupled to the beam."

Cutsforth argues that the Board's interpretation renders the phrase "coupled to" meaningless. It argues that the Board expanded the meaning of the term "coupled to" beyond its plain meaning without any supporting evidence. We agree with Cutsforth that the claims-at-issue require a "brush catch" to be a physical structure that is separate from, and not a sub-component of, the claimed "beam." It goes beyond the plain meaning of "coupled" to say that a sub-component (e.g., an engine in a car) is "coupled to" the component as a whole (e.g., the car). No

evidence shows that the inventors intended to deviate from the plain meaning of "coupled to."

Turning to the Board's analysis of the Krulls reference, the Board found that Krulls discloses a "brush magazine 12" that is coupled to a portion of the "resilient member 56," teaching the claimed "beam" and "brush catch," respectively. Under the correct construction, substantial evidence does not support the Board's findings. The "brush magazine 12" in Krulls comprises a number of components, including the "resilient member 56." Since the "resilient member 56" is a sub-component of the "brush magazine 12" as a whole, it is not "coupled to" the "brush magazine 12." In other words, the "resilient member 56" is a part of the "brush magazine 12"; it is not "coupled to" the "brush magazine 12."

Even if the Board found Krulls disclosed the "beam" through the remaining portion of the "brush magazine 12," excluding the sub-component "resilient member 56," substantial evidence does not support the Board's finding of anticipation. While such a determination might support a finding that the "coupled to" limitation was met, no reasonable fact finder could conclude that the "slidably engage[]" limitation would be met under such an interpretation. The claims-at-issue require the "beam" to include an "engagement portion" that slidably engages with the mounting block. There is no dispute that the only part of the "brush magazine 12" that slidably engages with a mounting block is the "resilient member 56." Thus, while viewing Krulls' "brush magazine 12" less the "resilient member 56" as the claimed "beam" may satisfy the "coupled to the beam" limitation, it would frustrate the "slidably engage[]" limitation. No substantial evidence supports the Board's finding of anticipation by Krulls.

MotivePower preserved no argument that Krulls anticipates the claims-at-issue under Cutsforth's construction. Moreover, MotivePower did not dispute before the

Board that the "slidably engaged with the beam engagement portion" limitation cannot be met under Cutsforth's construction. *See* Petitioner's Reply to Patent Owner's Response at 14, *MotivePower, Inc. v. Cutsforth, Inc.*, No. IPR2013-00268, 2013 WL 8595963 (P.T.A.B. Nov. 1, 2013), Paper No. 21. We reverse the Board's finding that Krulls anticipated the claims-at-issue.

## III. Conclusion

For the foregoing reasons, we *reverse* the Board's determination that claims 14, 16-19, and 21-22 of the '906 patent are anticipated by each of the Ohmstedt and Krulls references. Because anticipation was the only ground upon which the IPR was instituted as to these claims, there are no remaining issues that warrant a remand.

**REVERSED**

COSTS

Costs to Cutsforth.